UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSÈ LISBOA, JR., | ) | CASE NO.  1:11 CV 1861 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| JUDGE NANCY FUERST, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff José Lisboa filed the above-captioned civil rights Complaint against Judge Nancy A. Fuerst, Judge Diane M. Palos, Judge Deena R. Calabrese, Judge Peter J. Corrigan, Judge Richard J. McMonagle, Judge Timothy J. McGuinty, Judge Nancy R. McDonnell, Ed Fitzgerald, Governor John R. Kasich, Judge Bridget McCafferty, and John & Jane Does 1-50.  Mr. Lisboa alleges the Defendants have violated 42 U.S.C. §§ 1983, 1985, 1986, 18 U.S.C. § 241, 18 U.S.C. §§ 1961-62, as well as several state laws.  He seeks compensatory and punitive damages totaling $100,000.000.00, as well as declaratory relief.

Defendants State of Ohio and Ohio Governor Kasich ("State Defendants") filed a Motion to Dismiss on October 5, 2011.  A Motion to Dismiss for Lack of Jurisdiction and Failure

to State a Claim on behalf of Deena R. Calabrese, Peter J. Corrigan, Nancy A. Fuerst, Bridgett McCafferty, Nancy R. McDonnell, Timothy J. McGuinty, Richard J. McMonagle, and Diane M. Palos ("Judicial Defendants") was also filed the same date.

On October 20, 2011, Mr. Lisboa filed a Motion for Extension of Time until November 8, 2011 to file a response to the State Defendants' Motion to Dismiss (Doc. No. 13).  The next day, he filed a Memorandum of Law and Fact in Opposition to the State Defendants' Motion to Dismiss and a Motion to Convert Their 12(b)(6) Motion to a Rule 56 Motion for Summary Judgment and for Discovery pursuant to Rule 56(f). (Doc. No.14).  Three days later,  Defendant Ed Fitzgerald filed a Motion to Dismiss for Failure to State a Claim (Doc.  No. 15).  On October 27, 2011, Mr. Lisboa filed Memorandum of Law and Fact in Opposition to State Defendants' Motion to Dismiss (Doc.  No.  16).  Inasmuch as Mr. Lisboa has already filed a Memorandum of Law opposing  the State Defendants' Motion to Dismiss, his Motion for Extension (Doc.  No.  13) to oppose that Motion is **denied as moot.**  In addition, the request to convert the Motions to Dismiss to Motions for Summary Judgment is **denied**, as well as the request for Discovery. (Doc. No. 14). For the reasons set forth below, the Defendants' Motions to Dismiss (Doc. Nos. 9, 10 & 15) are granted and this action is **dismissed**.

*Background*

Mr. Lisboa's claims stem from an indictment filed against him in the Cuyahoga County Court of Common Pleas in 2004.  *See State of Ohio v. Lisboa*, No. CR-04-451451-ZA (Cuy. Ct. Com. Pl., filed May 6, 2004)(McCafferty, J.)("Indictment I").[1]   The indictment charged him

---

[1]      At the time the indictment was filed, the case was before Judge McCafferty.  The case has since been reassigned to Judge Michael Astrab.

with aggravated assault in violation of ORC  § 2903.12, domestic violence in violation of ORC §

2919.25, and possessing criminal tools in violation of ORC § 2923.24.  *Id*.

Four months later, another indictment was issued.  *See State of Ohio v. Lisboa*,

CR-04-456885-A (Cuy. Ct. Com. Pl., filed Sep. 23, 2004)("Indictment II").  Indictment II charged

Mr. Lisboa with conspiracy to engage in felonious assault, drug possession, possession of criminal

tools, and two counts of witness or victim intimidation and retaliation.  A *nolle prosequi* was entered

on the indictment by the prosecuting attorney on October 1, 2004.[2]

Mr. Lisboa pled guilty to aggravated assault and domestic violence on October 1,

2004 on Indictment I.  *See Lisboa*, No. CR-04-451451 (JE of 10/1/04).  As a condition of his guilty

plea, Mr. Lisboa waived extradition and agreed to leave the United States within 45 days of the date

of the plea agreement.[3]  *See id.*

Mr. Lisboa was deported to Brazil on June 17, 2005, where he remains today.

Almost two years after his departure, he challenged Indictment I by filing a Motion to Vacate and

Allow Withdrawal of Plea in the Common Pleas Court under Criminal Rule 32.1 on April 21, 2006.

Court records reveal:[4]

> The main evidence in support of appellant's motion

---

[2]　　　An arraignment scheduled for October 7, 2004 was cancelled without explanation.  *See*
CR-04-456885 (JE of 10/6/04).

[3]　　　On November 1, 2004, Mr. Lisboa  filed a motion to correct an October 1, 2004 Journal
Entry.  The court granted the motion to reflect the following corrected entry: "DEFENDANT
SHALL SERVE A TERM OF INCARCERATION OF 11 MONTHS NOT 18 MONTHS IF
PLEA AGREEMENT IS NOT COMPLIED WITH."  *Lisboa*, No. CR-04-451451 (JE of
11/1/04).

[4]　　　The Court takes notice of relevant facts outlined in the Eighth District Court of Appeals'
unpublished opinion vacating the plea and sentence imposed upon Mr. Lisboa in Indictment I.

for a new trial was an affidavit he received in March 2006 from witness, Bill Wilson (originally the state's informant). In the affidavit, Wilson indicated that appellant's wife, Kimberly, had paid him to set up appellant to commit a crime, but that appellant had eventually stated that he wanted to abandon the plan. In the motion for a new trial, appellant argued that the trial court lacked jurisdiction to agree to the 45-day time period to leave the country; that he did not enter into a knowing and voluntary plea because he thought he could prevent deportation under the agreement; that he was denied effective assistance of counsel because his attorney failed to tell him that he could be deported; that the state failed to reveal evidence that his wife had "set him up" to be deported by paying Wilson and that appellant had renounced the conspiracy; and that tapes, which revealed he had renounced the conspiracy, had been tampered with.

*State of Ohio v. Lisboa,* No. CR-04-89283, at *1 (Ohio 8th Dist. Ct. App., Feb. 14, 2008). After a full hearing on December 19, 2006, the trial court denied his motion. He then appealed his conviction and sentence to the Eighth Appellate District Court on January 11, 2007.[5] The Court of Appeals vacated his plea and sentence.[6] *See State of Ohio v. Lisboa*, No. CR-04-89283 (Ohio 8th Dist. Ct. App., Feb. 14, 2008). The appeals court determined that the ten-year period of community control sanction was in violation of O.R.C, 2929.15(A)(1). The case was remanded to the common

------

[5]    On July 23, 2007, Mr. Lisboa appealed Case No. CR-04-456885 in the Eighth Appellate District. The appeal was dismissed *sua sponte* on September 5, 2007 and the Supreme Court of Ohio declined jurisdiction. Mr. Lisboa filed a Motion for Discharge and/or to Dismiss Charges on September 23, 2008, which is still pending before the court. Judge Michael Astrab denied his Motion for Assignment of Counsel based on the fact that Mr. Lisboa is living in Brazil. He advised Mr. Lisboa that he would be entitled to *retain* counsel at any time, but would not be *appointed* counsel until he personally appeared before the court.

[6]    While Mr. Lisboa characterizes this as a reversal of his criminal conviction, the appeals court expressly declined to address his claims of asserted error, stating simply that the sentence imposed exceeded the statutory maximum.

pleas court on March 3, 2008.  A pre-trial conference was scheduled for November 17, 2008.

On September 23, 2008, Mr. Lisboa filed Motions for Discharge and/or Dismissal of Charges in both cases.[7]  During the pendency of review on these Motions, Judge McCafferty held the November 17, 2008 pre-trial conference to address the appellate court's remand.  Mr. Lisboa appeared *pro se* via video conference along with the prosecutors.  Judge McCafferty continued the conference until December 8, 2008, noting: "Defendant is unable to return to the United States pending a ruling of the Board of Immigration Appeals allowing him to do." *Lisboa*, No. 451451 (JE of 11/20/08).  Judge McCafferty also denied Mr. Lisboa's motion requesting she disqualify or recuse herself.

On April 9, 2009, Mr. Lisboa was indicted a third time in the Cuyahoga County Court of Common Pleas.  *See State of Ohio v. Lisboa*, No. CR-09-522757-A (Cuy. Ct. Com. Pl. 2009) ("Indictment III").  He was charged with felonious assault, telecommunications harassment, and aggravated menacing.  *Id.*  Judge Richard McMonagle issued a certified summons for his arraignment, which was returned "Signed by Other."   Judge McMonagle then issued a *capias* for Mr. Lisboa on April 23, 2009.  Mr. Lisboa moved to set aside the *capias* and requested permission to enter a not guilty plea *in absentia* on May 20, 2009.  Judge Nancy McDonnell denied both requests on August 27, 2009.[8]

---

[7]     On February 23, 2009, Judge McCafferty denied his Motion to Dismiss Case No. CR-04-451451.

[8]     On September 22, 2009, Mr. Lisboa filed two Notices of Appeal in his 2009 indictment. The appeals were dismissed *sua sponte* on November 16, 2009 and December 3, 2009, respectively.  He filed a third appeal on October 30, 2009, which was dismissed *sua sponte* on January 8, 2010.  On March 2, 2010, he filed a *pro se* Motion to Dismiss the Indictment based on
(continued...)

During an August 21, 2009 pre-trial conference on Indictment I, Judge McCafferty questioned the prosecution's plans to extradite Mr. Lisboa.  The prosecutor explained he was awaiting the results of a hearing allegedly pending "before U.S. Immigration."  The pre-trial conference was continued until September 3, 2009.

On August 26, 2009, Mr. Lisboa appealed the trial court's denial of his Motion to Dismiss Indictment I.  A rescheduled pre-trial hearing was held on September 9, 2009. The Judgment Entry from that hearing, filed on September 11, 2009,  established:

> A REVIEW OF THE DOCKET REVEALS THAT AT THE LAST PT, STATE INDICATED IT WOULD APPRISE THE COURT OF THE INTENT TO EXTRADITE DEFENDANT. STATE WAS AWAITING THE RESULTS OF A HEARING BEFORE US IMMIGRATION THAT DEFENDANT HAD APPRISED THE COURT AND COUNSEL WAS PENDING. THE COURT HAS NOT BEEN UPDATED AS TO EITHER THE STATUS OF SAID HEARING AND/OR EXTRADITION PROCEEDINGS PERTAINING TO THIS DEFENDANT. DEFENDANT INDICATED THAT ON JULY 7, 2008 AN IMMIGRATION JUDGE ORDERED HIS DEPORTATION REVERSED AND THE UNITED STATES GOVERNMENT APPEALED AND SAID APPEAL IS PENDING. AS SUCH, COURT CANNOT PROCEED WITH THE CASE UNTIL AND UNLESS DEFENDANT EITHER IS ABLE TO RETURN TO THE COUNTRY OR IS EXTRADITED BY THE STATE OF OHIO. COURT SETS A PRETRIAL ON 12-15-09 AT 9AM. TO RECEIVE AN UPDATE ON SAID ISSUES. THERE SHALL NOT BE ANY ACTIVITY ON THE CASE IN THE INTERIM, UNTIL THE COURT CAN CONFIRM THE DEFENDANT IS IN THE UNITED STATES OF AMERICA. THE CLERK IS ORDERED TO SERVE A COPY OF THIS ORDER TO MAXWELL  MARTIN,  ASSISTANT  COUNTY

---

[8](...continued)
vindictive prosecution. The motion was denied on April 2, 2010.  Mr. Lisboa filed two additional Notices of Appeal on April 28, 2010. Both of his appeals were dismissed *sua sponte* on May 6, 2010.  *Lisboa*, No. CR-09-522757.  That is the last entry, to date, on the docket in the case.

> PROSECUTOR, . . . AND JOSE LISBOA, DEFENDANT, AT: RUA MINISTRO FERREIRA ALVES 208-SL-01 SAO PAULO, SP, BRASIL 05009-060. MR. LISBOA MAY PARTICIPATE VIA TELECONFERENCE AND A COURT REPORTER SHALL BE PRESENT AT SAID PRETRIAL. DEFENDANT REQUESTS A TRANSCRIPT OF THESE PROCEEDINGS AND MAY ORDER SAME FROM THE COURT REPORTER'S DEPARTMENT, BY CONTACTING THAT DEPARTMENT AND ARRANGING SAME. IT IS SO ORDERED. 09/09/2009 CPBMM 09/10/2009 12:07:39

*Lisboa*, No. CR-04-451451-ZA (JE of 9/11/09.)  Slightly more than one month later, the Eighth District Court of Appeals dismissed *sua sponte* Mr. Lisboa's October 29, 2009 appeal of Indictment I because he failed to file a brief in support of the appeal.  He filed a Motion for Reinstatement of Appeal and Extension of Time on November 17, 2009, which the Court of Appeals denied.[9]

Mr. Lisboa claims an Immigration Judge issued an Order on July 7, 2008 that "reversed and terminated Jose Lisboa's deportation." (Compl. at ¶ 40.)  He alleges that legal counsel for the Board of Immigration Appeals' (BIA) then colluded with the Defendants to reverse the IJ's decision to reopen his removal proceedings.

The Public Access to Court Electronic Records (PACER) reveals Mr. Lisboa filed an appeal in the Sixth Circuit on December 16, 2009 challenging the BIA's decision to overrule the IJ's grant of his motion to reopen removal proceedings.  *See Lisboa v. Holder*, No. 09-4521 (6th Cir. filed Dec. 16, 2009).  On August 29, 2011, the Sixth Circuit vacated the BIA's order and remanded the action to the Board for further proceedings.  *Id.*  Relying on its recent holding in *Pruidze v.*

---

[9]     The last entry on the docket is Mr. Lisboa's June 6, 2011 Motion for Reconsideration of the court's denial of his motions for return of property and assignment of counsel.  The court denied both motions based on the fact that Mr. Lisboa is residing in Brazil and cannot personally appear before the court.  *Lisboa*, No. CR-04-451451 (JE of 6/1/11).

*Holder*, 632 F.3d 234 (6th Cir.  2011), the Sixth Circuit held that the BIA did have jurisdiction to consider Mr. Lisboa's motion to reopen even though he left the United States on an order of removal.  The Sixth Circuit noted that, on remand, the BIA must "exercise its jurisdiction to determine whether or not to uphold the reopening, whether the reopening is considered to be on Lisboa's motion or *sua sponte*. *Lisboa*, No. 09-4521, slip op. at 9.

Before the Sixth Circuit issued its August 2011 opinion, Mr. Lisboa filed a civil rights complaint in this Court on May 17, 2011.  Three months later, he moved to withdraw the complaint without prejudice.  The undersigned granted his request on August 7, 2011. On September 1, 2011, the Complaint before this Court was filed.

## Analysis

Mr. Lisboa raises fifteen claims for relief. In his first two claims, he alleges the Defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. §§1983 and 1985. He maintains the Defendants intended to detain, incarcerate and deport an innocent man in violation of the Fourth, Fifth and Fourteenth Amendments.  He claims the Defendants tampered with evidence and leveled false allegations against him by "manufacturing" probable cause for his arrest and falsely accusing him of crimes.  Additionally, he alleges the Defendants violated 42 U.S.C. § 1986 when they knowingly pursued false charges against him, instead of challenging the legitimacy of the charges against him. The remaining claims include: (4) breach of fiduciary duty; (5) aiding and abetting; (6) failure to train and supervise; (7) willful, wanton and reckless conduct; (8) spoilation; (9) conspiracy in violation 18 U.S.C. §241; (10) civil RICO in violation of 18 U.S.C. §§1961 and 1962; (11) fraud; (12) negligence; (13) intentional infliction of emotional distress; (14) declaratory and injunctive relief; and (15) third party malpractice.

-8-

All of the allegations upon which Mr. Lisboa's Complaint rests are based on his unsuccessful theory that he was 'set up' to commit a crime by his ex-wife Kim Lisboa, through the actions of the State's chief witnesses, Bill Wilson and Cliff Vodicka.  As outlined above, the issue has unsuccessfully been raised in the courts on numerous occasions.  Here again Mr. Lisboa attaches affidavits from Messrs. Wilson and Vodicka  admitting they were paid by Mr. Lisboa's ex-wife to entrap him to commit a crime.  He alleges there was political pressure from elected officials in Cuyahoga County, as well as payoffs "from 'others' to get Jose Lisboa illegally busted and deported." (Compl. at ¶ 34.) He claims the Defendants knew all of this allegedly illegal activity was taking place, but colluded to rule against him to cause him financial and emotional hardship.  He cites as an example the *capias* filed by Judge McMonagle, which he considers a punitive measure designed to restrict his ability to travel internationally, thus undermining his attempts to earn a living.  Many of these same arguments formed the basis for the motions to dismiss Indictments I, II and III that he filed in Cuyahoga County Court.

Mr. Lisboa now alleges that Cuyahoga County judges:

> ignore the facts; invent their own facts; ignore the Ohio Rules of Civil Procedure, the Local Rules, and the Ohio Rules of Evidence; ignore the law; ignore applicable case law; cite erroneous case law; commit perjury by making statement theat they know to be false in their orders; violate parties' right in any way they can; commit obstruction of justice; deny access to the courts; and trample the Constitutional rights of litigants without a thought.

Compl. at ¶ 7.)  Although he raised these concerns with the County's Administrative Law Judge, he alleges she disregarded his concerns.  He believes this Court is his only recourse.

Mr. Lisboa believes the Governor of Ohio, the County Executive and all of the judicial officers who presided over his criminal, domestic and administrative cases in Cuyahoga

County are indirectly and directly responsible for injuries he has suffered.  He claims the "Ongoing Federal Corruption probe," marked by recent indictments of Cuyahoga County officials and judges establishes *per se* proof of widespread corruption in the County.  He adds that Judge McCafferty's conviction in federal court and "her willingness & actions to assist Frank Russo in case fixing suits" support his claims that the Defendants colluded to falsely charge and convict him in County court. (Compl. at ¶26.)

*Standard*
*Motion to Dismiss*

Defendants have moved to dismiss the Complaint pursuant to Federal Civil Rules 12(b)(1) and 12(b)(6). Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff' burden to prove jurisdiction in order to survive the motion to dismiss.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990);  *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974); *see Kusens v. Pascal Co.*, 448 F.3d 349, 359 (6th Cir.2006).

A dismissal under Rule 12(b)(1) requires the Court to consider one of two applicable categories, depending on the nature of the defendant's challenge. *Golden v. Gorno Bros*., 410 F.3d 879 (6th Cir.2005).  Where a defendant challenges the factual basis for jurisdiction, the district court must weigh the evidence presented, and the burden is on the plaintiff to prove a basis for subject matter jurisdiction exists. *DLX, Inc.*, 381 F.3d at 516.  If, however, this Court's subject matter jurisdiction is challenged "on its face," the Court must, effectively, resolve the motion under the standard applicable to a Rule 12(b)(6) motion. *See id.*; *RMI Titanium Corp. v. Westinghouse Elec.*

-10-

*Corp.*, 78 F.3d 1125 (6th Cir.1996).

Here, the State of Ohio Defendants challenge this Court's subject matter jurisdiction on its face.  Therefore all well-pleaded allegations in the Complaint are accepted as true and construed in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ___ U.S. ___,___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570(2007)).

*Immunity*

**A. Eleventh Amendment**

The State Defendants assert that all of Mr. Lisboa's claims against them must be dismissed for lack of jurisdiction under the Eleventh Amendment.  The Eleventh Amendment deprives federal courts of jurisdiction to hear suits brought by United States citizens against a State unless the State unequivocally consents to suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate state immunity. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984).  The Amendment extends to suits brought by "Citizens or Subjects of any Foreign State." U.S.C.A. CONST. AMEND XI.  This would of course include Mr. Lisboa, as a citizen of Brazil.

Mr. Lisboa argues his claims are not barred by the Eleventh Amendment because the defendants waived immunity in this case.  He cites "*Haybarger v. Lawrence County Adult Probation and Parole, et al.*," to argue that states may waive immunity under the Rehabilitation Act if political

-11-

subdivisions received federal funding.[10]  Obviously, this case does not involve the Rehabilitation Act.  Further, Mr. Lisboa simply declares immunity is waived "when federal money is received from political subdivisions such as" the defendants.  (Pl.'s Mem. Op. at 9.)   While this may be an axiom of law, the declaration alone does not establish the Defendants have waived immunity in this case.

A State may be sued in federal court when a State consents to suit or the case concerns a statute passed pursuant to Section 5 of the Fourteenth Amendment. *Alden v. Maine*, 527 U.S. 706, 754 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59 (1996).  The State of Ohio has not consented to suit in federal court. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir.1999).  States are protected by the Eleventh Amendment even from 42 U.S.C. § 1983 suits, such as this, because the statute only creates a cause of action against a "person" who causes the deprivation of another's constitutional rights. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989).  As Mr. Lisboa concedes, the State of Ohio is not a "person" subject to suit under § 1983.  Moreover, state officials sued for money damages in their official capacity are entitled to Eleventh Amendment immunity because the suit is in fact an action against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

---

[10]     The proper case citation is "*Haybarger v. Lawrence County Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir.2008)."  The case involved a former state employee who sued his employer and others, alleging violations of the Rehabilitation Act (RA), Americans with Disabilities Act (ADA), Family and Medical Leave Act (FMLA), and the Pennsylvania Human Relations Act (PHRA).  All of the plaintiff's claimed were dismissed with the exception of his RA claims.  On appeal, the Third Circuit held that receipt of federal funds by a subunit of a Pennsylvania judicial district waived Eleventh Amendment immunity under the Rehabilitation Act (RA) for claims against employer.

In the alternative, Mr. Lisboa maintains, immunity is not available in suits seeking injunctive relief: "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14,(1985)).  Mr. Lisboa notes that the Supreme Court has articulated this exception to Eleventh Amendment immunity in *Ex parte Young,* 209 U.S. 123, 150–57(1908), which he believes would permit him to sue Governor Kasich. In *Ex Parte Young*, the Court held that the Eleventh Amendment does not bar suits seeking injunctive relief against state officers charged with an ongoing violation of federal law. *Id.*,at 150–57.   *Young*, however, only "abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's action." *Children's Healthcare Is A Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir.1996).

Mr. Lisboa argues his "illegal exile . . . due to [a] capias issued in April 2009 for the new fraudulent indictment" establishes that an ongoing violation of federal law exists.  As a threshold matter, there has been no determination that he was illegally deported.  At this stage, the Sixth Circuit has simply vacated the BIA's decision to deny Mr. Lisboa the opportunity to reopen his removal proceedings and remanded to the issued to the BIA for further proceedings.  Further, as already noted, there has been no determination that any indictment filed against Mr. Lisboa was fraudulent. The Court cannot accept, as fact, declaratory conclusions of law. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)(legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences).

More important, Mr. Lisboa fails to allege in what unconstitutional action the Governor engaged that would abrogate his immunity. *Deters*, 92 F.3d at1415. The Sixth Circuit

-13-

requires that a state official threaten and be about to commence proceedings in order for the exception to apply. *Id*.  There is simply no act the Governor is poised to take that would justify a waiver of his immunity under the Eleventh Amendment.  At best, the claims against Governor Kasich are based on *respondeat superior* liability. The theory of *respondeat superior* cannot provide a basis for liability in a § 1983 action. *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658 (1978). For the reasons set forth above, the State of Ohio, Governor Kasich and Ed Fitzgerald [11] are dismissed as party defendants.

**B.  Judicial Immunity**

The doctrine of judicial immunity protects judicial officers from suits seeking money damages and applies even in the face of "allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam).  The Judicial Defendants argue they are entitled to absolute immunity from this § 1983 suit wherein Mr. Lisboa seeks $100,000,000.00.  *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

There are only two circumstances when judicial immunity can be overcome: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11–12 (citations omitted).  Mr. Lisboa argues the Judicial Defendants are not entitled to immunity because of "their blatantly personal and administrative improprieties, and lack of proper, lawful and honest administration of justice . . . detailed in Lisboa's complaint are obviously and overtly administrative and personal." (Mem.  In

---

[11]     Although Mr. Lisboa lists County Executive Ed Fitzgerald as a party defendant, he omits any further reference to Mr. Fitzgerald's liability in the body of his Complaint.

Op., at 25-26).  Although the Judicial Defendants argue that he is challenging the decisions they issued related to his pending criminal charges, Mr. Lisboa denies that is the basis for his Complaint. He asserts he

> is not seeking relief from the adverse judicial decisions against him but relief from the *independent claims on the face of the complaint*.  These adverse judicial decisions against Lisboa were simply the result vis a vis the product of the unlawful activities, 'the conspiracy' of the defendants against Plaintiff that occurred in private, in collusion with one another and outside judicial proceedings

(Mem. Opp. Mot.  Dismiss, at 29.)  Mr. Lisboa fails to disclose what claims are independent of the judicial decisions leveled against him.  All of the Judicial Defendants decisions are inextricably intertwined with Mr. Lisboa's accusations of conspiracy to violate his civil rights.  He describes all three indictments filed against him as "fraudulent," and asserts that he was "illegally deported." There is no basis in law for his theory, however, that because the BIA reversed the IJ's decision to reopen his deportation and that his plea and sentence were vacated, a determination that his deportation was illegal or indictments were "fraudulent" is warranted.

The Supreme Court has held that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id*. at 12 (quoting *Stump*, 435 U.S. at 362).  Mr. Lisboa does not cite a single incident in which any defendant acted in an unofficial role as a judge or outside his or her jurisdiction.  Again, the court of appeals' reversal of Mr. Lisboa's sentence and guilty plea did not strip away the trial judges' entitlement to judicial immunity. Even if he alleged decisions were made in bad faith, judges are still entitled to absolute immunity. *See Mireles*, 502 U.S. at 11; *Pierson v. Ray*, 386 U.S. 547, 554 (1967)

-15-

("This immunity applies even when the judge is accused of acting maliciously and corruptly...."). The lack-of-jurisdiction exception to judicial immunity is narrow, and Mr. Lisboa has failed to reasonably suggest any of the judges acted in the "clear absence of all jurisdiction" here. *Stump*, 435 U.S. at 357; *see also id.* at 356 ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.") Accordingly, Judge Nancy A. Fuerst, Judge Diane M. Palos, Judge Deena R. Calabrese, Judge Peter J. Corrigan, Judge Richard J. McMonagle, Judge Timothy J. McGuinty, Judge Nancy R. McDonnell, and Judge Bridget McCafferty are entitled to absolute immunity from suit.

*Failure to State a Claim*

If there were any remaining defendants over which this Court had jurisdiction, the Complaint could not survive because Mr. Lisboa has failed to state a claim for relief. To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived him of a right secured by the Constitution and law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States. *Baker*, 443 U.S. at 140.

Mr. Lisboa alleges Defendants conspired to deprive him of his "federal rights" in

-16-

violation of 42 U.S.C. §§1983 and 1985. He maintains the Defendants intended to detain, incarcerate and deport an innocent man in violation of the Fourth, Fifth and Fourteenth Amendments. Relying on the old *Conley v. Gibson*, 355 U.S. 41 (1957)(abrogated by *Twombly*) standard, he believes his allegations sufficiently state a claim of conspiracy wherein "defendants and their agents/employees would ignore the evidence provided of [sic] the criminal set up, the payoff to detectives and county informants and the illegal persecution of Cuyahoga County Prosecutors through impossible charges in a new 2009 indictment." (Pl.'s Mem. Op. at 16.)

Mr. Lisboa clearly demanded and received judicial review of his challenges to the indictments filed against him in the Cuyahoga Court of Common Pleas. The court held full hearings, rejected his challenges to the charges and proceeded with the case until his deportation. Mr. Lisboa filed numerous appeals of the trial court's decision, including a challenge to the appeal court's decision to vacate his sentence and plea. Thereafter, the Supreme Court of Ohio denied his petition for certification of appeal. He now seeks monetary relief, injunctive relief and an Order referring this matter to the disciplinary counsel for the Supreme Court of Ohio.

This Court is without jurisdiction to review any judgment of the court of common pleas based on the appellate court's decision to vacate his sentence. By statute, only the Supreme Court of the United States is bestowed with appellate jurisdiction to review final judgments of the highest courts of the respective states. *See* 28 U.S.C. § 1257. It is a long-standing principle that section 1257 amounts to a grant of exclusive appellate jurisdiction to the Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005).

The doctrine set forth in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ("Rooker-Feldman"), is a

-17-

combination of abstention and *res judicata* considerations that underscores the exclusive authority section 1257 provides. *Rooker-Feldman* instructs that federal district courts lack subject matter jurisdiction to review state court judgments. Therefore, to grant Mr. Lisboa's requested relief would require a determination that the Ohio court's judgment was erroneous and would foreclose implementation of that judgment. *See FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996). Under the doctrine of Rooker-Feldman this Court lacks subject matter jurisdiction to stay the pending proceedings against Mr. Lisboa in Cuyahoga County Court.

### Abstention

Even if this Court had subject matter jurisdiction, it should abstain. Under the principles of federalism enunciated in *Younger v. Harris*, 401 U.S. 37 (1971), abstention is mandated if the State's interests in the proceedings are so important that the exercise of the federal judicial power would disregard the comity extended between the States and the National Government. *Id.* There are three pending indictments against Mr. Lisboa in County court. Thus, *Younger* mandates that this Court defer to that court's ability to resolve federal questions presented during the course of litigation and abstain from any judgment on the merits of Mr. Lisboa's claims in his pending criminal cases before the Cuyahoga County Court of Common Pleas. *Id.* at 1526–1527. As Mr. Lisboa's federal claims cannot survive, this Court declines to exercise supplemental jurisdiction over any state law claims in this case pursuant to 28 U.S.C. § 1367(c)(1). *See* 28 U.S.C. § 1367; *Gregory v. Hunt*, 24 F.3d 781, 790 (6th Cir.1994)(where no federal claims remain, the district court has discretion as to whether it should dismiss supplemental state law claims).

### Conclusion

Based on the foregoing, Mr. Lisboa's Motion for Extension (Doc. No. 13) is denied

as **moot**, and his Motion to Convert Defendants Motion to Dismiss and Request for Discovery (Doc. No. 14) is **denied**. The Defendants' Motions to Dismiss (Doc. Nos. 9 & 10) are **granted**. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

       IT IS SO ORDERED.

                   /S/SOLOMON OLIVER, JR.
                   CHIEF JUDGE
                   UNITED STATES DISTRICT COURT

October 31, 2011